**FILED**
**Sep 17, 2020**
**08:29 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION CLAIMS
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MURFREESBORO

| | |
|---|---|
| **CARLOS AGUILAR,** | ) **Docket No. 2019-05-1383** |
| **Claimant,** | ) |
| **v.** | ) **State File No. 116019-2019** |
| **FOREVER FLOORING, LLC,** | ) |
| **Respondent.** | ) **Judge Dale Tipps** |

---

## EXPEDITED HEARING ORDER GRANTING BENEFITS

---

This Court held an Expedited Hearing on September 8, 2020, to determine whether Mr. Aguilar is entitled to medical and temporary disability benefits. Mr. Aguilar asserted he was Forever Flooring's employee; Forever Flooring contended he was an independent contractor. The Court holds that Mr. Aguilar is likely to prevail at a hearing on the merits that he was an employee and is entitled to medical treatment. However, he has not established at this time that he is entitled to temporary disability benefits.

### History of Claim

Mr. Aguilar worked as an installer for Forever Flooring for fewer than two weeks before he suffered an injury on November 20, 2019. The parties agreed that he was using a table saw at a customer's home and cut two fingers, resulting in the amputation of one of them. Justin Bolger, the sole member of Forever Flooring, LLC, arrived at the scene soon after and took Mr. Aguilar to the emergency room.

Forever Flooring denied the claim, asserting that Mr. Aguilar was an independent contractor. The hearing testimony primarily involved Mr. Aguilar's employment status.

Mr. Aguilar testified that he contacted Mr. Bolger to see if he needed help in his business. He said he did not have any tools, and Mr. Bolger agreed to provide them. Mr. Bolger also agreed to pay Mr. Aguilar $18.00 per hour and believed he could provide forty hours of work per week.

Mr. Aguilar maintained that Mr. Bolger controlled his work and scheduled his hours. Mr. Bolger was usually present at the jobsite and worked alongside him, although

1

occasionally Mr. Aguilar began work while waiting for Mr. Bolger to arrive. Mr. Aguilar did not think he had the right to hire his own assistants, and Mr. Bolger denied Mr. Aguilar's request to bring his brother to work on a job. On cross-examination, Mr. Aguilar denied working other flooring jobs with his brother while he was working for Forever Flooring.

In contrast to Mr. Aguilar's testimony, Mr. Bolger said that he considered Mr. Aguilar to be an independent contractor, since they discussed that when he offered him work. He believed Mr. Aguilar was working on other jobs and was trying to develop his own customers. Mr. Bolger recalled Mr. Aguilar working on another flooring project on his two days off.

Mr. Bolger contended that he did not control Mr. Aguilar's work hours. As an example, he described a time that he consented to Mr. Aguilar's request to work two or three hours on a day when Mr. Bolger was not going to be present. Further, he did not set starting or stopping times for Mr. Aguilar or tell him when he could take his lunch break.

Tools such as a table saw, chop saw, mallets, and compressor were furnished by Mr. Bolger. However, at least once, Mr. Aguilar used his own truck to haul off used flooring.

Regarding Mr. Aguilar's request to bring his brother into the job, Mr. Bolger testified that he did not refuse the request. Instead, he told Mr. Aguilar it would be better if he paid Mr. Aguilar and let Mr. Aguilar pay his brother. He explained that this was because he "was under the impression he was an independent contractor."

Mr. Bolger admitted he was initially uncertain whether Mr. Aguilar would be an employee or independent contractor. When Mr. Aguilar first started working, Mr. Bolger viewed him as an independent contractor. He said he needed time to see if Mr. Aguilar was competent before hiring him as an employee. However, Mr. Bolger acknowledged, "I can see now things were left vague."

Text messages between Mr. Bolger and Mr. Aguilar showed the discussion that led to Mr. Aguilar working for Forever Flooring. The conversation began with Mr. Aguilar's text looking for work. Over the next few days, they discussed Mr. Aguilar's experience and pay history until Mr. Bolger asked if he could schedule Mr. Aguilar for the week of November 18 and offered forty hours at $18 per hour. Then, a few days later, Mr. Bolger asked if Mr. Aguilar could help with an earlier job that had just come up. Mr. Aguilar said he was working on Saturday and Sunday but should be free during the week.

Mr. Bolger confirmed Mr. Aguilar's start date with a text message that included the following:

My business is picking up and I'm hoping to find a couple [of] good workers.

I'm excited to see how you work out. I like to think I'm an easy going, understanding boss that invites input into my business. It's possible that you have some experience in flooring that I don't, so feel free to speak what's on your mind as we start work. I didn't know what exactly [you're] wanting W-9 or 1099? I don't mind having it under the table for the first couple of jobs until we figure out which route works best. I currently have a couple of part time help, one of which you'll meet this week.

At the hearing, Mr. Aguilar requested a return to his authorized treating physician, payment of medical bills, and temporary disability benefits for the time he missed work. Forever Flooring contended that Mr. Aguilar is not entitled to benefits because he was an independent contractor. In the alternative, it argued that Mr. Aguilar failed to show entitlement to medical or temporary disability benefits.

## Findings of Fact and Conclusions of Law

Mr. Aguilar must present sufficient evidence demonstrating he is likely to prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1) (2019). Because Forever Flooring stipulated that Mr. Aguilar was injured at the jobsite on November 20, 2019, the threshold issue is whether Mr. Aguilar was Forever Flooring's employee or an independent contractor at the time.

### *Employee/Independent Contractor*

Tennessee Code Annotated section 50-6-102(12)(D)(i) directs courts to consider the following factors when determining whether an individual is an employee or an independent contractor:

(a) The right to control the conduct of the work;
(b) The right of termination;
(c) The method of payment;
(d) The freedom to select and hire helpers;
(e) The furnishing of tools and equipment;
(f) Self-scheduling of working hours; and
(g) The freedom to offer services to other entities[.]

The right to control the conduct of the work is the most significant factor when determining whether a worker is an employee or independent contractor. Further, once it is established that an employment relationship exists, "the burden is on the employer to prove the worker was an independent contractor rather than an employee." *Thompson v. Concrete Solutions*, 2015 TN Wrk. Comp. App. Bd. LEXIS 3, at *14, 15 (Feb. 10, 2015).

3

Applying each factor, both witnesses described mostly working together on the same site. Mr. Aguilar might have worked independently occasionally, but Mr. Bolger's regular presence, as well as his working alongside Mr. Aguilar on the same project, suggest that he controlled the conduct of the work and favors a finding that Mr. Aguilar was an employee.

As for the right of termination, Mr. Bolger could have terminated Mr. Aguilar at any time. This suggests an employee/employer relationship.

Regarding the method of payment, this factor generally supports a finding of an employment relationship because Mr. Bolger paid Mr. Aguilar an hourly wage, rather than a contract price.[1]

Concerning the freedom to select and hire helpers, the parties' testimony conflicted. Mr. Aguilar said he was not allowed to bring his brother to help. Mr. Bolger, on the other hand, testified that he told Mr. Aguilar he would have to pay his brother himself. Notably, Mr. Bolger seemed to suggest he would pay Mr. Aguilar extra so that he could pay his brother from the additional payment. This calls Forever Flooring's contention into question because it appears it would have been paying the other worker by merely funneling the payment through Mr. Aguilar. Further, the fact that Mr. Aguilar had to request permission to bring in his brother implies that he did not have the freedom to select and hire his own helpers. At best, the Court finds this factor favors neither party.

As to the furnishing of tools, this factor clearly favors Mr. Aguilar. Mr. Bolger not only provided all the tools, but he also used them alongside Mr. Aguilar as they worked.

Regarding scheduling, Mr. Bolger told Mr. Aguilar that he thought he could offer him forty hours of work per week. This suggests that Mr. Bolger was responsible for scheduling Mr. Aguilar's work hours. Mr. Bolger also testified about a time when he agreed to Mr. Aguilar's request to work two or three hours on a day when Mr. Bolger was not going to be present. This indicates that Mr. Aguilar would have been unable to work on his own schedule without Mr. Bolger's permission. Further, Mr. Bolger testified that Mr. Aguilar worked another job on his days off. The fact that Mr. Aguilar had "days off" implies that he was expected to coordinate his workdays with Mr. Bolger. This factor supports the existence of an employer/employee relationship.

Finally, regarding the freedom to offer services to others, the parties disagreed as to whether Mr. Aguilar worked for his brother on his days off. However, Forever Flooring presented no evidence on whether the parties had any understanding as to exclusivity. At

_____

[1] The fact that Mr. Bolger offered to pay Mr. Aguilar "under the table" until they decided whether he would receive a 1099 or a W-9 shows that neither party had any clear understanding of the relationship at the time of the accident. Thus, their respective impressions of Mr. Aguilar's status or whether they had "a meeting of the minds," as argued by Forever Flooring, are not relevant.

best, this factor favors neither party.

Most of the factors that favor one party or the other, especially the element of controlling the work activities, supports the existence of an employer/employee relationship, and Forever Flooring presented no proof establishing that Mr. Aguilar was an independent contractor. Therefore, the Court holds that he would likely prevail at a hearing on the merits on his claim that he was an employee.

## *Medical Benefits*

The Court turns to Mr. Aguilar's request for medical benefits. "In circumstances where an employer refuses to provide medical treatment and/or denies the employee's claim, such employer bears the risk of being held responsible for medical expenses incurred by the employee in the event the claim is deemed compensable." *Young v. Young Elec. Co.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 24, at *16 (May 25, 2016). This principle applies here. Forever Flooring's denial of Mr. Aguilar's claim required him to seek medical treatment on his own. However, as Mr. Aguilar did not offer any admissible evidence of reasonableness and necessity of his medical bills or their amounts, the Court cannot find he is likely to establish entitlement to payment of those bills at this time.

Nevertheless, Mr. Aguilar proved he has already established a patient-doctor relationship with Dr. Brinkley Sandvall, who performed his amputation and reconstruction surgeries. Mr. Aguilar expressed his desire to return to her during the hearing. Dr. Sandvall is, therefore, designated as his authorized treating physician, and Forever Flooring shall schedule a return appointment with her office as soon as practicable. *See Thompson v. Comcast, Inc.,* 2018 TN Wrk. Comp. App. Bd. LEXIS 1, at *21-22 (Jan. 30, 2018).

## *Temporary Disability Benefits*

Mr. Aguilar also requested temporary disability benefits. To receive temporary total disability benefits, Mr. Aguilar must prove (1) he became disabled from working due to a compensable injury; (2) a causal connection between his injury and his inability to work; and (3) his period of disability. For temporary partial disability benefits, Mr. Aguilar must show that his treating physician returned him to work with restrictions that Forever Flooring either could not or would not accommodate. *Jones v. Crencor Leasing and Sales*, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7, 8 (Dec. 11, 2015).

Here, Mr. Aguilar presented no medical proof that his physicians took him completely off work or assigned restrictions because of his injury. Without evidence that he was disabled or restricted from working, Mr. Aguilar has not proven he is likely to succeed on a claim for temporary disability benefits.

**IT IS, THEREFORE, ORDERED** as follows:

5

1. Forever Flooring shall provide Mr. Aguilar with medical treatment made reasonably necessary by his November 20, 2019 injury. Dr. Brinkley Sandvall shall be the authorized treating provider, and Forever Flooring shall schedule an appointment for Mr. Aguilar as soon as practicable.

2. The Court denies Mr. Aguilar's requests for payment of medical bills and temporary disability benefits at this time.

3. This case is set for a Scheduling Hearing on December 22, 2020, at 9:00 a.m. You must call toll-free at 855-874-0473 to participate. Failure to call might result in a determination of the issues without your further participation. All conferences are set using Central Time.

4. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance might result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email at WCCompliance.Program@tn.gov.

**ENTERED SEPTEMBER 18, 2020.**

_____

**Judge Dale Tipps**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:
1. Mr. Aguilar's written discovery responses
2. Copies of text messages
3. Photographs of Mr. Aguilar's injuries
4. Dr. Sandvall's progress note of December 19, 2019
5. Vanderbilt Orthopaedics treatment notes (Identification Only)
6. Vanderbilt Orthopaedics treatment notes

7. Vanderbilt Office Visit note of December 12, 2019 (Identification Only)
8. Medical bills (Identification Only)
9. Affidavit of Carlos Aguilar

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. First Report of Injury
5. Notice of Denial
6. Request for Investigation
7. Exhibit and Medical Records Lists
8. Forever Flooring's Statement in Opposition to Expedited Hearing Request

## CERTIFICATE OF SERVICE

I certify that a copy of the Expedited Hearing Order was sent as indicated on September 18, 2020.

| Name | Certified Mail | Email | Service sent to: |
|------|---------------|-------|------------------|
| Carlos Aguilar, Claimant | X | X | 1350 Hazelwood St., Apt. 201A Murfreesboro, TN 37129 Ricardo.aguilar.0327@gmail.com |
| Christopher Kim Thompson, Respondent's Attorney | | X | kim@thompsonslawoffice.com |

_____
**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

Docket No.: _____

State File No.: _____

Date of Injury: _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____    ☐ Motion Order filed on _____

☐ Compensation Order filed on_____    ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

### Parties

**Appellant(s)** (Requesting Party): _____ ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 ____.

_____
*[Signature of appellant or attorney for appellant]*